UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GLENN H. STEPHENS III,             )<br>                                                          )<br>    *Plaintiff*,                              )<br>                                                          )<br>v.                                                     )<br>                                                          )<br>MICHAEL YOUNG, in his official capacity, )<br>ACTING SECRETARY OF            )<br>DEPARTMENT OF AGRICULTURE   )<br>                                                          )<br>                                                          )<br>    *Defendant*.                           )<br>_____) | Civil Action No.<br><br><br><br>April 24, 2017 |

## AMENDED COMPLAINT

1. This is an action for money and compensatory and other relief brought by Plaintiff Marcy Raich under Title VII of the Civil Rights of 1964, 42 U.S.C. § 2000e et seq,, arising from retaliation on the basis of race protected EEO activity by the U.S. Department of Agriculture (USDA or Agency).

### JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

3. Venue is appropriate in this Court under 28 U.S.C. § 1391.

4. Plaintiff fulfilled all jurisdictional prerequisites to institution of this suit, exhausting administrative remedies including the filing of complaint(s) with the Agency's EEOC Office. The Plaintiff received a Final Agency Decision (FAD) on January 26, 2017. See Attached Exhibit 1, 2.

### PARTIES

5. Plaintiff Marcy Raich serves the USDA's Animal and Plant Health Inspection Service (APHIS) as a WG-5048-05 Animal Caretaker at 360 International Park Newman Georgia 30277.

6. Defendant, Acting Secretary of Agriculture Michael Young, is sued in his official capacity. The Agency is headquartered at 1400 Independence Ave., S.W. Washington, D.C. 20250.

**FACTS**

7. Plaintiff's Counsel Glenn H. Stephens III earned a J.D. in 2000 from the University of California Berkeley School of Law (Boalt Hall). Stephens is a member of the D.C. Bar and this Court's Bar. From 2002 to 2008, Stephens served as a GS-14 Senior Counsel to NLRB Member Wilma Liebman. From September 2013 to May 2015, Stephens served as an Equal Opportunity Specialist (EOS) in USDA's Employment Investigation Division (EID), Office of Adjudication (OA).

8. Under EEOC MD-110, Equal Opportunity Specialists (specialists) and other formal complaint processors are neutrals. Specialists need not be attorneys and do not serve as Agency counsels.

9. In late 2014, Stephens worked with investigative vendor Draughn & Associates (Draughn) and Draughn's investigator Consuela Reed on Raich's formal EEOC complaint APHIS-2014-00240.

10. Raich's complaint was accepted for investigation on September 8, 2016 (124 days). On September 9, 2014, the contract investigative vendor assigned the Raich case declined on September 11, 2014.

11. Draughn was contracted to investigate the case on September 12, 2014. Draughn failed to submit an investigation plan (IP) to Stephens until a month and a half later on October 27, 2014 (173 days).

12. Because investigations should be conducted in 180 days or less, the Raich investigation was expedited.

13. Stephens received the IP from Draughn on October 27, 2014 and approved on November 4, 2014.

14. On November 5, 2014, Stephens drafted and sent a "180-day letter" to Raich, informing Raich that her investigation would likely not be timely completed and informing Raich of her election options.

15. The investigation of Raich's complaint, which began on November 5, 2014, was conducted entirely by who was assisted at times by Jonathan Draughn. Reed and Draughn drafted the investigation plan (IP) for investigation, investigated the complaint, including gaining affidavits from Raich, the Responding Management Officials (RMOs), other witnesses, and relevant Complainant and Agency documents (Counselor's Report, Complaint, Acceptance Letter, etc.). Reed and Draughn drafted and compiled both the draft Report of Investigation (ROI) and the final ROI.

16. Upon receipt of draft and final ROIs, EID specialists, most of whom were not attorneys, conduct a "legal sufficiency review." Although the term "legal sufficiency review" seems to imply legal analysis, in fact, these review were pro forma. Specialists used two checklists to determine whether all of the elements of the ROI required by the MD 110 were included in the ROI.

17. Under MD 110 and EID practice, specialists did not opine on the merits of investigative complaints.

18. On December 4, 2014 (211 days), the ROI was provided by Reed and Draughn. Stephens drafted a "Distribution Letter" (the cover letter provided with the ROI) and EID issued the ROI to Raich.

19. Beginning in March 2015, Stephens was subjected to bullying and harassment by EID Acting Team Lead Tina Quarles. Based on her openly expressed disdain for contractors and attorneys (who she deemed "the lowest gene pool of people), Quarles bullied four attorney contractors out of EID.

20. On April 15, 2015, Stephens reported Quarles' bullying and harassment to Carl Martin Ruiz, the Director of OA. Stephens met subsequently with Ruiz and other OA and EID officials regarding the harassment, but OA and EID failed to stop, prevent and remedy the problem.

21. On May 5, 2015, concerned about a possible ethics issue that arose in the course of his work, Stephens contacted Ryan Segrist, Senior Ethics Advisory, the USDA Office of Ethics, 1400 Independence Ave., S.W., 350W, Washington, DC 20250 at ryn.segrist@oe.usda.gov and inquired about the applicability of Federal Ethics Rules to contractors.

22. On May 7, 2015, Segrist replied to Stephens answering, "Unless your employment contract specifies that you are subject to the ethics rules, the rules do not apply to you."

23. Stephens employment clause had no such clause.

24. On May 12, 2015, in retaliation for Stephens' EEOC activity (opposition to Quarles' bullying and harassment), Stephens was informed that his contract would not be renewed on May 25, 2015.

25. On July 12, 2015, Stephens filed an EEOC complaint alleging discrimination, harassment/hostile work environment, and retaliation with the Agency's Conflicts Complaint Division (CCD) then known as the Corporate Services Division (CSD). CSD/CCD failed to investigate his complaint.

26. Stephens file a Civil Complaint in D.C. District Court on October 16, 2016. Stephens' Title VII case, *Stephens v. Young* (USDA), Civil Action No. 16-020261 (JDB) is now pending.

27. In addition to the Plaintiff, Stephens represented a number of USDA EEOC complaints.

28. When officials in USDA's OASCR, OA, or EID divisions learn Stephens has been retained as counsel for a USDA complainant, the Agency retaliates by refusing to mediate and settle his client's EEOC cases, even in circumstances where the Agency was previously working to settle that case.

29. When officials in USDA's OASCR, OA, or EID divisions learn Stephens has been retained as counsel for a USDA Plaintiff in Federal Court, the Agency retaliates by stalling or refusing to mediate and settle the cases, even when the Agency previously worked to settle that case.

30. On April 25, 2016, Raich contacted Stephens regarding representation in her EEOC cases.

31. On April 27, 2016, Raich provided Stephens with a copy of a January 15, 2016 email summarizing a teleconference on the morning of January 12, 2016, in which Agency Counsel Mallik Bell informed EEOC Administrative Law Judge Justin Evan, "we are going to settle this, it is not a case that is going to a hearing." Bell informed the Judge that the Agency wanted to resolve Raich's cases and would be making settlement offers in both. The Judge asked Bell how long that would take and Bell answered 45 to 60 more days. As a result, Judge Evans stayed the case for 60 days, encouraged that the parties discuss settlement and informed the parties that a hearing would be scheduled if settlement failed.

32. On May 2, 2016, Stephens contacted Bell, informed Bell that he was now Raich's representative, and expressed Raich's interest in settling her case directly or through mediation. At that time, Bell had no prior knowledge of Stephens, Stephens work in EID or Stephens EEOC activity.

33. On May 3, 2016, Stephens proposed relocation as a settlement for Raich's second complaint and informed Bell that a settlement proposal regarding Raich's first complaint would be forthcoming.

34. On May 19, 2016, Bell rejected Raich's relocation settlement proposal. Bell counter-proposed a settlement consisting of Raich's medical retirement and asked Stephens for a "settlement figure."

35. On May 23, 2016, Stephens requested a copy of Raich's ROIs from EID.

36. On May 24, 2016, Bell emailed Stephens and inquired. "Also, what did Mrs. Raich think about proceeding with a Disability/Medical Retirement?"

37. Between May 23, 2016, and June 1, 2016, officials in OASCR, OA, EID informed Bell of Stephens EEOC activity and complaint and directed Bell to cease the nearly-complete settlement talks.

38. On June 1, 2016, Bell e-mail Stephens:

    Mr. Stephens it has come to the Agency's attention that you worked for the ASCR's office from October 2013-May 2015, the same time frame in which Marcy Raich's complaint was being processed. Based on this information, the Agency is going to insist that you withdraw from representing Mrs. Raich in this matter. As you know a representative can be disqualified for having a conflict of interest. As the Code of Federal Regulation 5 C.F.R. § 1201.31(b), provides in relevant part:

    A party may choose any representative as long as that person is willing and available to serve. The other party or parties may challenge the designation, however, on the ground that it involves a conflict of interest or a conflict of position.

    In this instances, it is a conflict of interest for a former employee (Mr. Stephens), with USDA ("the Agency") to represent a current employee of the same agency in relation to an EEO matter. Also See 18 U.S.C. §207.

39. On June 1, 2016, Stephens relied:

    Earlier, Mr. Bell wrote claiming that because I am a former USDA "employee" that various conflict provisions, particularly 18 USC 207.

    As a former Federal employee (at NLRB) I am well aware of the ethics and conflict restrictions applicable to employees. Employees.

    But USDA failed to inform Mr. Bell that I was not an employee at USDA. I was a contractor. And more than a year ago, USDA took the position that the ethics rules that are applicable to federal employees were not applicable to me as a contractor. See below.

    Now, a year later, in an effort to deprive you of capable representation, USDA conveniently tries to argue the opposite.

    Absent case authority precisely on point stating that contractors are obligated to follow the authority Mr. Bell cites, I shall not withdraw.

    That said, I am considering whether I should voluntarily withdraw to avoid the appearance of impropriety.

    Glenn

40. On that same day, Stephens added:

    Also, in May of last year and today, I reviewed my Panum employment contract for any clause providing that the ethics standards applicable to a USDA employee were also applicable to me. The contract contains no such clause.

    Thus, consistent with the position of the USDA ethics office in May of last year, the ethics standards applicable to a USDA employee were not applicable to me as a Panum contractor working at USDA.

    Therefore, I am not conflicted out of this case by 18 USC 207.

    But if USDA's ethics office was wrong, please let me know the case authority proving that proposition.

41. On June 1, 2016, Stephens emailed Raich and Bell:

    In fairness to Mr. Bell, neither he nor his supervisor is likely behind this.

    Last May, as retaliation for my EEOC and whistleblower complaints, my EID contract was not renewed. Since then, OASCR (Joe Leonard, Fred Pfaffle, Candace Glover, Dona Marshall) have continued to retaliate against me, including depriving me of employment opportunities.

    For example, last year after one of the investigative vendors that EID uses hired me as a contract investigator, Dona Marshall invented a new policy which prohibited former EID employees and contractors from investigating cases, claiming it represented a conflict of interest.

    Marshall's "policy" which came out the very same day she learned I was hired by the investigative entity makes little sense. If oversaw the work of contract investigators and vendors as an Equal Opportunity Specialist working for Panum, it is hard to image how that conflicts with me doing investigations working for the vendor. In both capacities, I was a neutral.

    Like the so-called conflict which Marshall invented, this "conflict" is simply another form of retaliation aimed at punishing me because I had the temerity to oppose bullying by a coworker, whistleblew over the falsification of records by Marshall and others, and filed EEOC and MSPB complaints.

    Ironically, it is USDA's civil rights branch that led the charge in retaliating against me. But this sort of hypocrisy on the part of OSCAR is well known. So well known that the Special Counsel complained to the President about it. See attached.

    Although he can't admit it, Mr. Bell and even his supervisor are likely being pushed by higher ranking OASCR officials like Joe Leonard or Fred Pfaffle or USDA attorney Martin Gold to remove me from this case.

    Before retaliating in this way, no one at USDA bothered to check whether its USDA's position that the ethics guidelines don't attach to contractors. But let's face it, this isn't really about ethics conflicts, its about OASCR/USDA getting me back.

42. On or about June 6, 2016, Bell informed Stephens he was leaving USDA.

43. On June 14, 2016, a coworker of Raich informed her that Bradley Siskind replaced Bell.

44. Stephens emails Siskind on June 14, 2016.

45. Despite entering Raich's case, Siskind did not email Stephens between June 14 and July 8, 2016.

46. On July 8, 2016, Siskind emailed Stephens cryptically, "Can we get conference call with the AJ? I'm not sure of the AJ's phone number."

47. Because Siskind refused to divulge the topic of the proposed conference call with the judge to Stephens, and because the last substantive exchange with Bell related to the purported conflict of interest, Stephens surmised that Siskind sought ambush Stephens in the conference call with a conflicts argument different from the baseless arguments made by Bell earlier. By refusing to divulge the alleged grounds of the purported conflict of interest prior to the conference call, Siskind hoped to prevent Stephens from doing research that would have allowed Stephens to counter Siskind's stance.

48. To prevent such ambush, Stephens emailed Siskind on July 10, 2016:

    Why, if you took this case over more than a month ago, are you responding to correspondence for the first time? I first emailed you on June 14. No reply.

    [T]he next time you ask something of me - like a conference call with a judge - give me enough information to determine whether the call is appropriate and an efficacious means to accomplish what you seek.

    Neither party looks good or benefits from wasting a judge's time on matters that can be handled or resolved in other ways.

49. Stephens' surmise that Siskind planned an ambush proved right. On July 13, 2016, Siskind emailed:

    If you won't agree to have a conference call with the administrative judge, then I'll just file a motion for a conflict of interest. I understand that you were a contractor and that the USDA rules may not have prohibited you from representing Ms. Raich. However, as a member of the DC Bar, there are additional ethics rules at issue. Even though you were a contractor, you were still representing USDA in the Raich matter when you signed off on the ROI for Ms. Raich. Specifically, DC Bar Rule 1.9 governs conflicts of interest: A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent.

51. Contrary to Siskind, Stephens never refused to agree to a conference call with the Judge Evans.

52. On June 15, 2016, Stephens spoke with the D.C. Bar's Ethics Counsel and was informed that Rule 1.9 was inapplicable. That same day, Stephens informed Siskind.

53. Despite knowing that the D.C. Bar deemed Rule 1.9 inapplicable, Siskind persisted.

54. On July 19, 2016, Siskind filed a motion to disqualify Stephens on the knowingly false grounds that Stephens participation violated Rule 1.9.

55. Siskind's motion violated a number of ethical rules.

56. On August 8, 2016, Raich filed a Motion for Sanctions related to Bell's unethical, groundless motion to disqualify Stephens under Rule 1.9.

57. On August 8, 2016, the Agency by Siskind filed a Reply to the Motion for Sanctions.

58. On October 1, 2016, Stephens attempted to revive settlement talks.

59. On October 4, 2016, Siskind refused, claiming "the Agency will address settlement once the Administrative Judge rules on the motion to recuse."

60. Both Raich and Stephens construed Siskind's October 4, 2016 email as signaling that USDA would not settle Raich's case if Stephens continued as counsel.

61. To facilitate settlement and to avoid even the mere appearance of a conflict of interest, Stephens helped Raich gain replacement counsel and withdrew from the case on November 8, 2016.

62. Since November 8, 2016, Siskind has refused or failed to engage in settlement negotiations.

63. In January 12, 2016, Agency Counsel Mallik Bell informed EEOC Administrative Law Judge Justin Evan, "we are going to settle this, it is not a case that is going to a hearing." Bell claimed the case would settle in 45 to 60 more days. In April and May 2016, Stephens and Bell made good settlement progress, with only the amount of monetary compensation separating the parties. But when officials in OASC/OA/EID learned that Stephens was now Raich's counsel, settlement was scuttled and Bell opted to seek Stephens disqualifications, albeit on entirely false grounds. After Bell quit with USDA, and Siskind replaced Bell, Siskind moved to disqualify Stephens on a false grounds and refused or failed to engage in settlement talks until a ruling on "recusal."

64. USDA has refused to mediate the EEOC case of Theodosia Sorto, a client of Stephens. As one of those rare cases in which the sexually harassing management official admits to harassing conduct, *Sorto* should have settled long ago. USDA's retaliatory refusal to mediate and settle the case has caused Sorto physical illness, emotional distress, and increased her expenditure on legal fees.

65. When officials in OASC/OA/EID learned that Stephens had been retained by Linda J. Solomon, the Plaintiff in *Solomon v. Vilsack*, 1:07-cv-1590 (August 31, 2016), USDA stalled signature of the settlement agreement and the payment of nearly one million dollars to Solomon for eight weeks.

66. Like USDA's stalling and then scuttling of settlement in the Plaintiff's case, USDA's stalling of the settlement in settlement in *Solomon* exacerbated Plaintiff Solomon's disability symptoms and needlessly increased Solomon's expenditures on legal representation.

## COMPLAINT ALLEGATIONS

### Count I

### (Title VII –Retaliation)

1. The Plaintiff incorporates by reference the facts averred in paragraphs 7 through 66 above.

2. The Plaintiff and her Counsel engaged in protected EEO activity. The Defendant USDA knew of the EEO activity of Both the Plaintiff and her Counsel. The Defendant USDA retaliated against the Plaintiff for her EEOC activity and her association with and representational relationship with her counsel Glenn Stephens. The Defendant USDA's retaliation against the Plaintiff exacerbated the physical, mental and emotional symptom her disability, caused the Plaintiff physical illness and emotional distress related to that physical illness, and resulted in the needless expenditure of legal fees answering the four baseless grounds for disqualification advanced by Bell and Siskind.

3. USDA's retaliation against the Plaintiff's protected activity and her associated and representation with Stephens is actionable under Title VII because USDA's retaliatory conduct would dissuade a reasonable employee or reasonable complainant from bringing and maintaining an EEO case.

**REMEDIES**

1. Plaintiff seeks attorney's fees at the Laffey rate related to answering USDA's "conflicts" argument.

2. Plaintiff seeks $90,000 in compensatory damages for the exacerbation of the symptoms of her disability, physical illness and emotional distress (depression, anxiety, fear, hopelessness).

3. Plaintiff seeks her attorney fees at the Laffey rate arising from this federal case.

Respectfully Submitted,

　/S/　Glenn Stephens　　4/24/2017
Glenn Stephens Ph.D.,
Esq. Bar No. # 472780
Federal Employees Defense, LLC
1725 I Street NW, Suite 300
Washington, DC 20006
202-258-6521
Drghs3@gmail.com

**CERTIFICATE OF SERVICE**

I certify that on April 24, 2017, a true, correct copy of the above was e-filed with the Court.

                                                         ***/S/   Glenn Stephens  4/24/2017***
                                                         Glenn Stephens Ph.D., Esq.
                                                         Bar No. # 472780
                                                         Federal Employees Defense, LLC 1725 I Street NW, Suite 300
                                                         Washington, DC 20006
                                                         202-258-6521
                                                         Drghs3@gmail.com